```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF DELAWARE

 3

 4   RAB LIGHTING INC.,              )
                                     )
 5                   Plaintiff,      )
                                     ) C.A. No. 20-1574-RGA
 6   v.                              )
                                     )
 7   IDEAL INDUSTRIES LIGHTING LLC,  )
     d/b/a CREE LIGHTING, and        )
 8   E-CONOLIGHT LLC,                )
                                     )
 9                   Defendants.     )

10
                                     J. Caleb Boggs Courthouse
11                                   844 North King Street
                                     Wilmington, Delaware
12
                                     Thursday, October 14, 2021
13                                   9:04 a.m.
                                     Oral Argument
14

15   BEFORE:  THE HONORABLE RICHARD G. ANDREWS, U.S.D.C.J.

16   APPEARANCES:

17               POLSINELLI PC
                 BY:  STEPHEN J. KRAFTSCHIK, ESQUIRE
18
                             -and-
19
                 SILLS CUMMIS & GROSS P.C.
20               BY:  SCOTT D. SIMPSON, ESQUIRE

21                                   For the Plaintiff

22

23

24

25
```

1   APPEARANCES CONTINUED:

2                   MORRIS NICHOLS ARSHT & TUNNELL LLP
                    BY:  RODGER D. SMITH, II, ESQUIRE
3                   BY:  LUCINDA C. CUCUZZELLA, ESQUIRE

4                                   For the Defendants

5

09:04:14 6                      ***  PROCEEDINGS  ***

09:04:14 7            DEPUTY CLERK:  All rise.  Court is now in

09:04:15 8   session.  The Honorable Richard G. Andrews presiding.

09:04:22 9            THE COURT:  Good morning.  Please be seated.  If

09:04:27 10  you're fully vaccinated, you can take your mask off.

09:04:34 11           So this is *RAB Lighting vs. Ideal Industries*

09:04:40 12  *Lighting*, doing business as Cree, Civil Action Number

09:04:45 13  20-1574, the Defendant's motion to stay pending the outcome

09:04:50 14  of IPR.

09:04:53 15           Mr. Smith, you represent the Defendant; right?

09:04:55 16           MR. SMITH:  I do, Your Honor.  Good morning.

09:04:56 17  I'm hear with my colleague, Cindy Cucuzzella from Morris

09:05:00 18  Nichols.

09:05:00 19           THE COURT:  Oh, okay.  All right.

09:05:02 20           And Mr. Kraftschik.

09:05:04 21           MR. KRAFTSCHIK:  Yes.

09:05:04 22           THE COURT:  How are you?  I haven't seen you in

09:05:06 23  a while.

09:05:06 24           MR. KRAFTSCHIK:  Good morning, Your Honor.

09:05:08 25  Stephen Kraftschik at Polsinelli for Plaintiff, RAB

| | | |
|---|---|---|
| 09:05:11 | 1 | Lighting.  With me is Scott Simpson of Sills Cummis. |
| 09:05:13 | 2 | THE COURT:  Who? |
| 09:05:14 | 3 | MR. KRAFTSCHIK:  Sills Cummis in New York. |
| 09:05:17 | 4 | S-I-L-L-S -- |
| 09:05:17 | 5 | THE COURT:  No, no, I'm writing out his name, |
| 09:05:25 | 6 | not -- |
| 09:05:25 | 7 | MR. SIMPSON:  Sorry, Your Honor.  Simpson, |
| 09:05:26 | 8 | S-I-M-P -- |
| 09:05:26 | 9 | THE COURT:  No, I got it.  I just -- all right. |
| 09:05:31 | 10 | Mr. Smith, are you doing this? |
| 09:05:33 | 11 | MR. SMITH:  I am, Your Honor. |
| 09:05:34 | 12 | THE COURT:  All right.  So I can pick off the |
| 09:05:37 | 13 | easy ones? |
| 09:05:39 | 14 | MR. SMITH:  I hope so.  Your Honor, I don't have |
| 09:05:41 | 15 | a whole lot to add to what's in the brief.  I would submit |
| 09:05:45 | 16 | that this is a pretty straightforward stay motion.  It is |
| 09:05:48 | 17 | sort of a textbook example, I think, of what the AIA was |
| 09:05:51 | 18 | meant to accomplish. |
| 09:05:52 | 19 | Our client, Cree Lighting, filed its IPR |
| 09:05:56 | 20 | petition within four months of the case being filed here. |
| 09:05:59 | 21 | Three months later, 30, roughly 30 of the 40 claims were |
| 09:06:03 | 22 | disclaimed by Plaintiff, so those have gone away.  There's |
| 09:06:06 | 23 | been simplification already there. |
| 09:06:08 | 24 | And then just three weeks ago, coincidentally, |
| 09:06:11 | 25 | at the time we filed our reply brief, the two IPRs were |

09:06:15  1   instituted as to all grounds as to the remaining claims.  So

09:06:19  2   it's a textbook example of what's meant to happen, that the

09:06:23  3   PTAB is supposed to take up these motions, and the Court

09:06:26  4   has, in its discretion, the ability to stay to allow the

09:06:29  5   PTAB to exercise its expertise.

09:06:31  6           THE COURT:  So, one of the things that you said

09:06:32  7   in your briefing was the design patent is a -- you didn't

09:06:38  8   use this word, but it was the thrust of what you said, a

09:06:42  9   trivial part of the case.  Can you just explain to me that

09:06:46  10  point?

09:06:47  11          MR. SMITH:  Your Honor, in terms of sales

09:06:49  12  volume, it's only three percent of the overall accused sales

09:06:53  13  volume here.

09:06:55  14          THE COURT:  Because the accused products that

09:06:59  15  are accused of infringing that are a small subset of the

09:07:02  16  overall accused products?

09:07:04  17          MR. SMITH:  Correct.  They are -- the products

09:07:06  18  accused of infringing the design patent are separate and

09:07:09  19  apart, they're different products from the ones that are

09:07:11  20  accused of infringing the utility patents.  They're two

09:07:14  21  different sets of products.

09:07:15  22          THE COURT:  Okay.

09:07:15  23          MR. SMITH:  The design patent only has two, I

09:07:18  24  believe, products accused of infringing there, and they are

09:07:21  25  only three percent of the overall annual sales of all the

09:07:25  1   fixtures accused of infringing all three patents.

09:07:27  2           THE COURT:  And since it's the case that you can

09:07:29  3   tell me there was only three percent of the overall annual

09:07:32  4   sales, can you give me an idea of what kind of dollar volume

09:07:35  5   that is?

09:07:36  6           MR. SMITH:  It's half a million dollars or a

09:07:38  7   little bit more.  It's in that sort of range on an annual

09:07:41  8   basis for sales.

09:07:44  9           THE COURT:  So is there much overlap between the

09:08:02 10   design patent and the other two patents in terms of what the

09:08:08 11   litigation would involve?

09:08:09 12           MR. SMITH:  There would be some, but your

09:08:13 13   instincts are right, Your Honor.  The patents are distinct.

09:08:15 14   There's a different patent family, if you want to call that,

09:08:18 15   different products, but it's a small part of the case.  I

09:08:21 16   don't know.  I mean, I don't know if RAB would have sued us

09:08:25 17   just on that one patent, for example.  I think they made a

09:08:27 18   decision to add it here and assert all three patents in the

09:08:29 19   same case.

09:08:30 20           And so we think that the simplification, the

09:08:32 21   savings to the Court from staying 97 percent of the case, if

09:08:36 22   you will, sort of answers the question of whether

09:08:39 23   simplification would happen here.  Certainly, in terms of

09:08:42 24   the stage of litigation, we're six months away from close of

09:08:45 25   fact discovery.  We're almost a year and a half, 17 months

09:08:47 1    away from trial.  So we'll actually have final written

09:08:50 2    decisions here in September of next year, six months before

09:08:53 3    the trial is even currently scheduled.

09:08:57 4            And there's still a lot of savings in terms of

09:08:59 5    effort here.  Tomorrow, we're exchanging claim construction

09:09:02 6    positions, and we don't have a Markman hearing until

09:09:04 7    February.  So there's a lot of work still to be done.

09:09:06 8            I know RAB has talked about what's been done

09:09:09 9    already, but there's still a lot to be done here for the

09:09:12 10   Court and the parties to get the case ready.

09:09:14 11           THE COURT:  Well, so I don't really remember

09:09:17 12   what was said in the briefs, but just from looking at the

09:09:22 13   docket, it appears there have been preliminary disclosures

09:09:25 14   and there has been some requests for production of

09:09:28 15   documents.  I mean, that's where we are in this stage of the

09:09:32 16   case; right?

09:09:33 17           MR. SMITH:  Correct, Your Honor.  There's been

09:09:34 18   sort of paper discovery.  No depositions yet.  In terms of

09:09:37 19   framing the issues, just over the summer I think we pointed

09:09:40 20   out in our briefing, in July, there was still placeholders

09:09:43 21   as to what the accused products were going to be.  I think

09:09:46 22   in the last, say, three weeks, maybe four weeks, we've

09:09:47 23   gotten updated infringement contentions.  But only in that

09:09:50 24   recent period, three to four weeks, have we gotten

09:09:53 25   additional products, and it was only this week.

09:09:55 1          I mean, there was some motion practice around

09:09:57 2    them amending the Complaint.  That has only been entered

09:09:59 3    recently and that they now assert new patents in the Amended

09:09:59 4    Complaint.

09:10:04 5          The two original representative claims that were

09:10:07 6    in the original claim from last November, those were two of

09:10:10 7    the ones that were disclaimed in the 30 of the 40.

09:10:12 8          THE COURT:  So are they asserting new patents or

09:10:15 9    just new claims?

09:10:16 10         MR. SMITH:  New claims. Thirty of the patents --

09:10:18 11   30 of the claims have been disclaimed.  Roughly ten are

09:10:20 12   still in play.  Three are asserted, but those three were

09:10:23 13   never even mentioned in the initial Complaint.  So --

09:10:25 14         THE COURT:  Well, you know, I wouldn't

09:10:28 15   necessarily put too much weight on that because they don't

09:10:31 16   really have to be; right?

09:10:33 17         MR. SMITH:  Fair enough, Your Honor.  The point

09:10:34 18   is just that the case is still being framed out as to what's

09:10:37 19   at issue.  There's new products coming in.  The claims are

09:10:40 20   being changed in and out.  And so, regardless of how much

09:10:43 21   paper discovery has been taken, it's still very much influx

09:10:47 22   and not yet final.

09:10:48 23         THE COURT:  But, in your view, because I granted

09:10:52 24   the Second Amended Complaint, because when I was, I guess,

09:10:55 25   looking at the briefing on this, I noticed that motion, and

09:10:59  1   I read enough to see that I thought I should grant that.

09:11:04  2   But that doesn't really change anything as far as you're

09:11:08  3   concerned in terms of -- I guess, if anything, you'd say

09:11:14  4   that actually helps you because it --

09:11:17  5           MR. SMITH:  It points out that the case is still

09:11:19  6   very much in an elementary, primary stage and hasn't

09:11:23  7   advanced, that the asserted claims are being updated, and

09:11:25  8   other things are being added.  There's a willfulness

09:11:29  9   allegation that is now part of the case.

09:11:32  10          THE COURT:  And I should remember this, but I

09:11:34  11  didn't focus on it.  What is RAB Lighting's status vis-a-vis

09:11:44  12  your client?  Are they competitors?

09:11:47  13          MR. SMITH:  Your Honor, there was some debate in

09:11:49  14  the --

09:11:49  15          THE COURT:  Oh, right, right.

09:11:51  16          MR. SMITH:  -- back and forth as to how --

09:11:52  17          THE COURT:  You were arguing about whether or

09:11:54  18  not you were competitors.

09:11:55  19          MR. SMITH:  Well --

09:11:55  20          THE COURT:  I was thinking that that should

09:11:57  21  actually be a fairly -- you would think there wouldn't be

09:12:01  22  too much argument over that.

09:12:02  23          MR. SMITH:  So a couple points on the

09:12:06  24  competition point.  One, it's certainly not a two-player

09:12:07  25  market.  It's a multi-player market.  It's Lighting

09:12:11 1    Fixtures, OSRAM, Acuity.  There's plenty of other players

09:12:13 2    here.

09:12:13 3            We can debate what their CEO said at the ITC.  I

09:12:17 4    think there's no debate that what he said is our customers

09:12:20 5    are different.  The way they go to market is different than

09:12:22 6    the way we go to market, so there's no competition at the

09:12:26 7    customer level.  The products might compete, but the

09:12:28 8    customer level.

09:12:29 9            So in terms of prejudice, it's typically erosion

09:12:32 10   of market share or erosion of goodwill that affect the

09:12:35 11   prejudice.  When they're different customer bases, I think

09:12:38 12   that that lack of prejudice sort of falls away or any

09:12:42 13   potential prejudice falls away.  There's really no prejudice

09:12:45 14   here.

09:12:45 15           And in terms of any tactical advantage we've

09:12:48 16   gotten, I don't know how we could have operated any more

09:12:50 17   quickly.  Filing the IPRs within four months, filing the

09:12:53 18   motion to stay.  So it was coincidentally, but so that the

09:12:57 19   briefing was done the same day the IPRs were instituted.

09:13:00 20           So in terms of tactical advantage to us, we've

09:13:03 21   operated with no dilatory motive here.  There are numerous

09:13:06 22   competitors in the market.  There's an admission, to some

09:13:09 23   extent, that we don't compete as to customers.  And there's

09:13:12 24   been no PI motion, so the urgency here just doesn't seem to

09:13:16 25   be anything that would prevent a stay from being granted.

09:13:20 1          So unless Your Honor has any other questions,

09:13:21 2    that's all I have.

09:13:22 3          THE COURT:  No, No.  Thank you, Mr. Smith.  I'll

09:13:25 4    give you a chance, if we discuss something else, to reply.

09:13:29 5          Mr. Simpson.

09:13:30 6          MR. SIMPSON:  Thank you, Your Honor.  May it

09:13:33 7    please the Court.  This is highly discretionary, this issue

09:13:37 8    in court.  And there are the three issues that the courts

09:13:40 9    typically look at, and I'll address them here today.

09:13:42 10          One is whether there's going to be prejudice to

09:13:44 11   RAB if a stay is entered.  And another important issue is

09:13:47 12   whether it's going to be meaningful simplification if

09:13:50 13   there's a stay.

09:13:51 14          And then the third issue, which Mr. Rogers (sic)

09:13:54 15   testified briefly is where we are in the case.  I won't

09:13:57 16   spend a lot of time on that last point, but I do believe

09:14:01 17   that the issues are framed here now.  Mr. Rogers is correct

09:14:04 18   that the infringement contentions are not set in stone, but

09:14:08 19   there's only a few products that we still have to look at.

09:14:11 20          And the only reason they're not in the case is

09:14:13 21   because we haven't received the products from them yet.  I

09:14:16 22   can't see them, so I can't decide whether or not they're

09:14:18 23   infringing or not.

09:14:19 24          But we're more than halfway through the fact

09:14:22 25   discovery phase.  We've invested a lot in this case already,

09:14:25 1    and I think the stage of the litigation, at least partially,

09:14:30 2    supports denial of the stay.

09:14:31 3           So this is Cree's burden --

09:14:35 4           THE COURT:  But under your theory, the stage of

09:14:38 5    the litigation would always support denial because, as

09:14:43 6    Mr. Smith said, they moved about as promptly as you can on

09:14:46 7    this, didn't they?

09:14:47 8           MR. SIMPSON:  Well, yeah.  I have no quarrel

09:14:49 9    with the fact that it took them some time to get these IPRs

09:14:52 10   filed.  I have no quarrel with the timing of that.  But, you

09:14:55 11   know, frequently when you're looking at very early stages of

09:14:58 12   litigation, people know these cases are coming, and they

09:15:01 13   file the IPRs, either before the litigation is filed or --

09:15:03 14          THE COURT:  Did they know this one was coming?

09:15:05 15          MR. SIMPSON:  No, I think that they knew

09:15:07 16   litigation was coming, but I don't think that they knew the

09:15:11 17   patents at the time.

09:15:12 18          THE COURT:  Well, so that would sort of

09:15:14 19   prevent --

09:15:15 20          MR. SIMPSON:  Yeah, I understand.  As I say, I

09:15:16 21   have no quarrel with them about the four months it took them

09:15:19 22   to file this, because there were 40 claims, and that took

09:15:23 23   time.  But, nevertheless, here we are in this litigation.

09:15:26 24   We're halfway through the fact discovery phase.  We've spent

09:15:29 25   a lot.  We've invested a lot in this case, and it's

09:15:31 1  important for us not to have it stopped underneath us here.

09:15:35 2          So it's Cree's burden to prove to you, Your

09:15:39 3  Honor, that a stay makes sense here.  We don't think that

09:15:41 4  they've met that burden.

09:15:43 5          We have three patents in this case.  Two of them

09:15:46 6  are IPRs.  Mr. Rogers is right, probably September 2022 --

09:15:51 7          THE COURT:  And excuse me.  Off the record.

09:15:51 8          (Whereupon a discussion was held off the

09:16:01 9  stenographic record.)

09:16:01 10         THE COURT:  All right.  So let's go back on the

09:16:02 11 record.

09:16:03 12         MR. SIMPSON:  I apologize.  Thank you.

09:16:06 13         So Mr. Smith is correct that these IPR

09:16:11 14 decisions, the final decision should come September 2022,

09:16:16 15 which is six months before our scheduled trial date,

09:16:19 16 assuming no slippage.  The '202 is not in the case, Your

09:16:22 17 Honor, and I'd like to, if I may --

09:16:23 18         THE COURT:  I'm sorry, the what is not in the

09:16:25 19 case?

09:16:26 20         MR. SIMPSON:  The '202 design patent.  It's not

09:16:28 21 in the IPR.

09:16:28 22         THE COURT:  Okay.  All right.  All right.

09:16:30 23         MR. SIMPSON:  It's not in the --

09:16:31 24         THE COURT:  Yeah, sorry.  I don't know these

09:16:32 25 patents by their numbers.

09:16:33  1            MR. SIMPSON:  No, that's okay.  It's a design

09:16:36  2    patent.

09:16:36  3            THE COURT:  But, yeah, if you call it the design

09:16:38  4    patent, then I know what you're talking about.

09:16:39  5            MR. SIMPSON:  Okay.  Thank you.

09:16:40  6        So I'd like to address that first, if I may.  I

09:16:42  7    mean, I understand and I don't have any dispute with their

09:16:44  8    facts, but I dispute their conclusion from the facts related

09:16:49  9    to the sales of that design patent.

09:16:51 10        Now, it's true that the accused products are a

09:16:55 11    small percentage of the overall sales in this case, but this

09:16:59 12    is not a mathematical analysis.  And there's still

09:17:03 13    substantial sales, and the reason that they're a small

09:17:05 14    percentage is because some of the other products are very,

09:17:08 15    very big sellers.

09:17:09 16        And that design patent, Your Honor, it's

09:17:12 17    important, because it serves a purpose for RAB.  And the

09:17:16 18    purpose it serves is it protects the line of products for

09:17:19 19    RAB.  It's a design patent.  It's basically a bullet-shaped

09:17:23 20    LED.  And Cree is now selling bullet-shaped LEDs.  And if

09:17:29 21    this design patent gets caught up in the stay, then we may

09:17:33 22    have to live without being able to address those products

09:17:39 23    that are look-alike products for what could be years.

09:17:43 24            THE COURT:  So if you didn't have the two

09:17:45 25    utility patents, would you have filed a suit on the design

09:17:48  1   patent by itself?

09:17:50  2          MR. SIMPSON:  I don't know, Your Honor.  I

09:17:52  3   really don't know.  You know, if it wasn't for the ITC case,

09:17:57  4   my guess is, no, because you know, patents serve a term

09:18:02  5   effect, and we don't want to, you know, pick fights where we

09:18:04  6   don't have to.

09:18:05  7          But the fact of the matter is it was important

09:18:10  8   enough for us to add to this litigation.  We realized it's

09:18:13  9   got different infringement analysis and things.  We realize

09:18:15 10   it's going to be an expense for us to fight it and it's

09:18:18 11   worth it for us, because otherwise, we have to live with

09:18:20 12   these look-alike products on the market for what could be

09:18:23 13   years, especially if the stay extends through the Federal

09:18:26 14   Circuit appeal.  So this is important to us.

09:18:30 15          And just because the relative sales aren't huge,

09:18:34 16   the numbers are still pretty big, and it's important to RAB.

09:18:37 17   And I think we've cited some cases, Your Honor, including a

09:18:40 18   couple of your oral Orders which have considered that as a

09:18:43 19   factor in denying stays.

09:18:45 20          The next point I want to make, Your Honor, I

09:18:48 21   think this is subtle, but I think it's very important.  The

09:18:52 22   more I look at the briefing from Cree and in preparing for

09:18:57 23   this argument, it appears to me that there's a plan here,

09:19:01 24   and the plan is there are two Defendants.  You have Cree

09:19:05 25   Lighting and E-Conolight.  And I think the plan is that Cree

09:19:11  1    Lighting is going to fight, fight, fight to invalidate these

09:19:14  2    patents in the IPR.  Then they're going to come here in this

09:19:17  3    litigation and have their wholly-owned subsidiary

09:19:20  4    E-Conolight fight, fight, fight for invalidity here without

09:19:23  5    any restrictions from the IPR.

09:19:26  6              And the reason why I say that is the case, Your

09:19:30  7    Honor, is because if you read their briefs very carefully,

09:19:32  8    you'll see that every time they tell you you're going to get

09:19:36  9    this great simplification, they say, the Cree Lighting

09:19:41  10   validity defenses are going to be resolved.  They never tell

09:19:44  11   you that E-Conolight's invalidity defenses are going to be

09:19:49  12   resolved.

09:19:50  13             THE COURT:  But isn't there some IPR doctrine

09:19:53  14   that, I want to call it privity, that means what you're

09:19:55  15   hypothesizing --

09:19:57  16             MR. SIMPSON:  Yes.

09:19:58  17             THE COURT:  -- is prohibited?

09:19:59  18             MR. SIMPSON:  Well, yes, and that's referred to

09:20:01  19   as real party in interest in the inter partes review

09:20:06  20   proceeding.  And if you go back and look at those petitions,

09:20:09  21   they do not identify E-Conolight as a real party in

09:20:11  22   interest.  They're a wholly-owned subsidiary, and they don't

09:20:14  23   identify it as a real party in interest.

09:20:17  24             So I'm pretty confident, Your Honor, from what

09:20:20  25   I'm reading and how carefully they phrase this

1  simplification issue in their briefs that they have every

2  intention of having E-Conolight, their wholly-owned

3  subsidiary, come in here and argue unrestricted based on the

4  IPR.

5          Now, don't get me wrong, Your Honor.  I don't

6  think they should be able to do that, and I will fight hard

7  to say they can't do that, but that's the plan.  And if

8  that's the plan, then that impacts two big issues here.

9          One is simplification, because when they tell

10 you that you're going to get simplification on the validity

11 issues, that's a fallacy.  You're not going to get any

12 simplification on the issues because E-Conolight is going to

13 do everything that Cree Lighting would have done any way.

14         And it's also important on the prejudice issue

15 for RAB, and the reason I say that is because we're going to

16 then have to fight the exact same prior art in the IPR and

17 then come in here and do it all again in front of the jury.

18 So that's a really big issue, Your Honor.  And their briefs

19 do not come out and say that E-Conolight is reserving its

20 right to make all these validity arguments, but that's the

21 way I understand it.  And Mr. Smith will correct me if I'm

22 wrong I'm sure.  That's a really important point.  And it

23 isn't laid out specifically in our briefing, either party's

24 briefing because it wasn't -- they didn't mention it

25 specifically for E-Conolight.

09:21:45 1          Let me --

09:21:47 2          THE COURT:  And did you mention it specifically?

09:21:49 3          MR. SIMPSON:  No, Your Honor, I didn't, and

09:21:51 4   frankly, because it didn't occur to me.  You know, their

09:21:54 5   briefs don't say E-Conolight is going to preserve their

09:21:57 6   invalidity positions.  Their briefs only say that when they

09:22:02 7   talk about simplification with validity, that they limit it

09:22:07 8   to Cree Lighting.  And it's subtle.  It's easy to skip over.

09:22:12 9          And so when I started preparing for this

09:22:14 10  argument, and I read the reply brief which says the same

09:22:17 11  thing, again, it's like, wait a second.  Then I went back to

09:22:21 12  the petitions and they don't add E-Conolight as a real party

09:22:24 13  in interest.  You put two and two together and figure out

09:22:27 14  what their plan is here.

09:22:29 15         And I hope I'm not, you know, misspeaking here,

09:22:33 16  Mr. Smith will correct me if I'm wrong, but I think that's

09:22:36 17  the plan.  So --

09:22:38 18         THE COURT:  All right.  I get your point and

09:22:41 19  I'll ask Mr. Smith about that in a minute.

09:22:43 20         What else?

09:22:44 21         MR. SIMPSON:  Okay.  So one other point is on

09:22:48 22  these institution decisions, Your Honor, we didn't get a

09:22:50 23  chance to have any briefing on that.  And I don't want to

09:22:54 24  get too deep into the weeds here, but if you look at those

09:22:58 25  institution decisions, there's basically one claim term at

09:23:01  1   issue in each IPR.  And for the infringement case, which is

09:23:06  2   going to be in this court, it doesn't matter how much it

09:23:10  3   comes out, either one of them.  It doesn't make any

09:23:12  4   difference because Cree is going to infringe either way.

09:23:14  5           So Cree makes these general statements that,

09:23:17  6   hey, you know, you're going to get some simplification and

09:23:20  7   you're going to get the guidance from the PTAB, but it's not

09:23:24  8   going to be on any claim terms --

09:23:25  9           THE COURT:  Yeah, you know, most of these, the

09:23:26 10   point that occurs -- you know, I'd be surprised if in the

09:23:33 11   last half dozen years, I've relied on that as a basis to

09:23:38 12   grant the stay.  You know, the main point of simplification

09:23:43 13   is the invalidity.

09:23:44 14           MR. SIMPSON:  Right, I understand.  Well, let me

09:23:46 15   address that point just for a moment then, too, because that

09:23:49 16   also gets into the substance of the IPRs.  And I'm not --

09:23:51 17           THE COURT:  No, No. Let's not get into the

09:23:53 18   substance of the IPRs --

09:23:53 19           MR. SIMPSON:  Okay.

09:23:54 20           THE COURT:  -- because I'm not in a position to,

09:23:56 21   and I don't at least analyze the IPRs.  They instituted.

09:24:01 22   That's the end of my --

09:24:03 23           MR. SIMPSON:  Okay.  Understood.  Understood.

09:24:05 24           So let me address the competitor issue, if I

09:24:07 25   might.  And I sense some frustration for Your Honor, and I

09:24:10 1    understand that because there's a lot of he-said-she-said.

09:24:13 2          THE COURT:  Well, you know, I wouldn't say

09:24:15 3    frustration because I've seen it before where I have people

09:24:19 4    in front of me disputing whether they're competitors.  And

09:24:24 5    you know, I mean, I understand there are lots of things that

09:24:28 6    can be disputed, but that just doesn't seem like it should

09:24:34 7    be one of them.

09:24:35 8          MR. SIMPSON:  I understand, Your Honor.  The

09:24:36 9    first point I want to make about this, usually when the

09:24:39 10   competitor issue is not an issue, you're talking about a

09:24:42 11   non-practicing entity, and that's then, obviously --

09:24:44 12         THE COURT:  Well, no.  I mean, if Verizon and

09:24:47 13   Sprint show up here, as they sometimes do, you know, they're

09:24:51 14   not saying -- well, I guess Mr. Kraftschik knows this.

09:24:54 15   They're not saying, Well, we're not competitors.  You know,

09:24:57 16   they know they're competitors.

09:24:59 17         MR. SIMPSON:  Yeah.

09:24:59 18         THE COURT:  But in any event, go ahead.

09:25:03 19         MR. SIMPSON:  I understand.  But the facts, just

09:25:05 20   look at the facts, Your Honor, and decide for yourself.  The

09:25:07 21   facts are -- we've got Mr. Barna, who's our CEO, this quote

09:25:12 22   that led to this whole dispute is on Page 9 of our

09:25:14 23   opposition.

09:25:15 24         And this is what he says, he says, "Similar

09:25:18 25   product portfolios in the same way," and he says that "we go

09:25:22 1    to market differently.  We sell exclusively to electrical

09:25:26 2    distributors.  Cree pursues what I would call an omnichannel

09:25:31 3    strategy.  I guess another way of saying that is they sell

09:25:33 4    to anybody anywhere.  If Cree sells to anybody anywhere,

09:25:37 5    then they're selling to distributors, and therefore, they're

09:25:39 6    a direct competitor."

09:25:41 7          In my mind, there's just no doubt about that.

09:25:43 8    And if you have any doubt about it, Your Honor, then Cree

09:25:46 9    themselves in the ITC, their exact words are "they sell like

09:25:50 10   and competitive products to RAB," and we've got that on

09:25:54 11   Page 9.

09:25:54 12         So they're competitors.  And both parties agree

09:25:57 13   and the case law supports that when you have competitors,

09:26:03 14   Courts hesitate to grant stays when they're direct

09:26:05 15   competitors.  And I think that's important here, Your Honor.

09:26:09 16         Just one other quick point about the competitor

09:26:12 17   point.  Mr. Smith raised, hey, there's all these other

09:26:16 18   competitors out there in the market, so how can this

09:26:19 19   possibly be a big deal?  Well, I can't see how that's

09:26:22 20   relevant, Your Honor, because we're not disputing that there

09:26:26 21   are other competitors generally in the LED space out there.

09:26:29 22   That's not the issue.

09:26:30 23         The case is about very specific design products,

09:26:33 24   the bullet design, for example.  The question is if that is

09:26:37 25   going to be relevant at all.  Are there any other

09:26:39  1    competitors out there selling those products and those

09:26:41  2    specific designs, because that's what the competition is

09:26:44  3    about in this case.  And so I think the whole like, hey,

09:26:48  4    there are other competitors kind of misses the mark.

09:26:51  5            And just let me close on one point, Your Honor.

09:26:56  6    The cases say you should look at the totality of the

09:26:59  7    circumstances.  And admittedly, I think this is perhaps a

09:27:03  8    case of first impression, but the totality of the

09:27:05  9    circumstances here, I think, should include beyond this

09:27:09 10    case.  You know, that Cree has brought an ITC case against

09:27:12 11    us and, as is the nature of ITC cases, it's moving at light

09:27:16 12    speed.  I don't need to tell you that one of the primary

09:27:21 13    purposes of patent rights, especially for companies that

09:27:24 14    aren't non-practicing entities that make their products, one

09:27:27 15    of the primary benefits of patents is deterrence.  It's

09:27:31 16    deterrence.

09:27:32 17            Why doesn't competitor A sue competitor B?

09:27:35 18    Because they're going to get countersued.  And what Cree is

09:27:40 19    asking you to do here, Your Honor, is in the middle of this

09:27:43 20    war, in the heat of the battle, take away our sword.  This

09:27:47 21    is a big advantage for RAB in this matter to have a present

09:27:54 22    current claim against Cree.  And it might, who knows, help

09:28:00 23    us to find a way to resolve this.  But I think that that's

09:28:04 24    part of the totality of the circumstances, and it is

09:28:06 25    prejudice to RAB, Your Honor, if it's taken away from us at

09:28:11  1   this time.

09:28:11  2              So unless you have further questions, Your

09:28:13  3   Honor, I --

09:28:14  4              THE COURT:  So is RAB Lighting privately owned,

09:28:20  5   or is it part of a public company or is it a public company?

09:28:25  6              MR. SIMPSON:  Privately owned.  I hope I'm not

09:28:27  7   misspeaking there, Your Honor, but I believe it's privately

09:28:29  8   owned.

09:28:30  9              THE COURT:  All right.  Thank you.

09:28:31 10              MR. SIMPSON:  Thank you.

09:28:33 11              THE COURT:  So Mr. Smith --

09:28:35 12              MR. SMITH:  Yes, Your Honor.

09:28:36 13              THE COURT:  -- are you being sneaky here?

09:28:39 14              MR. SMITH:  I think not.  To the extent it says

09:28:46 15   on the brief Cree Lighting, I think in the first line of

09:28:49 16   each brief it's defined the term Cree Lighting as these two

09:28:53 17   Defendants.  So any suggestion that we've been sneaky in how

09:28:56 18   we define the term Cree Lighting just --

09:28:59 19              THE COURT:  Yeah, yeah, I see that.

09:29:00 20              MR. SMITH:  So --

09:29:01 21              THE COURT:  Well, so maybe we can just cut to

09:29:04 22   the chase here, and I assume you're in a position to say

09:29:10 23   this, one way or the other, but if the IPR goes in favor of

09:29:18 24   RAB, is every Defendant in this case going to be estopped on

09:29:23 25   102 and 103 to the extent that the law says whoever brings

09:29:28  1    the claim in the IPR who filed the petition is?

09:29:32  2              MR. SMITH:  Your Honor, my understanding,

09:29:33  3    standing here today, is that the estoppel would apply to

09:29:36  4    both Defendants.  Now, I would have appreciated having this

09:29:39  5    issued raised in the briefing so I'm not on the fly here

09:29:44  6    being accused of a sneaky plan, as Your Honor called it, or

09:29:47  7    having to prove a negative that I don't have a sneaky plan

09:29:49  8    that I don't know about.  So it's, frankly, a little unfair

09:29:52  9    for the first time to be asked or posed that question from

09:29:56 10    the other side at oral argument.

09:29:57 11              My understanding is it is a wholly-owned

09:30:00 12    subsidiary.  My understanding, though I'm not a PTAB expert,

09:30:02 13    is that a wholly-owned subsidiary in this circumstance would

09:30:05 14    be considered a real party in interest, yes.

09:30:07 15              THE COURT:  All right.

09:30:11 16              MR. SMITH:  I had a couple other points, Your

09:30:13 17    Honor.

09:30:13 18              THE COURT:  Okay.  Go ahead.

09:30:15 19              MR. SMITH:  In terms of the pre-suit notice of

09:30:16 20    the Complaint, no notice from RAB in advance of the

09:30:19 21    Complaint.

09:30:19 22              THE COURT:  Yeah, I think Mr. -- I mean, I think

09:30:21 23    that's consistent with what Mr. Simpson said.

09:30:24 24              MR. SMITH:  The design patent, we're going to

09:30:26 25    vigorously contest that.  We're not suggesting, you know,

09:30:28 1  we're going to roll over and it's going to admit, oh, we're

09:30:31 2  copying their -- no, it's not infringed, and it's not valid,

09:30:33 3  and we'll contest that in this case.

09:30:35 4          THE COURT:  Yeah, I didn't take you to be

09:30:37 5  conceding on that one.

09:30:38 6          MR. SMITH:  In terms of what Mr. Barna said,

09:30:40 7  yeah, he sort of equivocates.  He's the CEO.

09:30:43 8          THE COURT:  Right.  Right.  I'm sorry, I was --

09:30:43 9          MR. SMITH:  The question posed to him was:  "Do

09:30:45 10  you consider Cree Lighting to be a competitor?"

09:30:48 11          "Answer:  Not particularly."

09:30:50 12          Now, he goes on and qualifies it, but his first

09:30:53 13  instinct when posed:  Is Cree your competitor, he says, "Not

09:30:55 14  particularly."  Now, granted, they're lighting companies,

09:30:57 15  and that's why I didn't want to get into the

09:31:01 16  he-said-she-said or he-said-he-said on that.  The fact is

09:31:03 17  that if they are not going to market in the same way, the

09:31:06 18  harm to their goodwill and to their market share is going to

09:31:09 19  not be the same if it was a two-player market or if we were

09:31:12 20  going to the same customers in the same way.  That's the

09:31:15 21  point there.

09:31:15 22          On the ITC case briefly, that's on our patents,

09:31:22 23  their products, but it's a different case.  And we chose to

09:31:25 24  go to the ITC.  If they had a basis to go to the ITC, they

09:31:30 25  could have.

09:31:30  1          THE COURT:  I take it a lot of their products

09:31:32  2   are imported from somewhere else?

09:31:34  3          MR. SMITH:  I'm not involved in the ITC case,

09:31:36  4   but yes, by force of the factors and ITC litigation, to the

09:31:40  5   extent there's litigation there, yes, it would be an

09:31:42  6   importation issue.

09:31:43  7          THE COURT:  Do you know, are your products

09:31:45  8   primarily imported from somewhere, or are they primarily

09:31:48  9   made in the U.S., or you don't know?

09:31:50 10          MR. SMITH:  I don't know, Your Honor.  I know we

09:31:51 11   do have suppliers, of course, but I don't know from where

09:31:54 12   they come.  But that's -- you know, they made a tactical

09:31:56 13   decision to file a Delaware District Court litigation here

09:32:00 14   on certain patents that, for better or worse, were

09:32:05 15   susceptible to a PTAB institution.  That's their decision.

09:32:09 16   That's the issue before the Court.

09:32:11 17          The ITC cases before the ITC, that's a different

09:32:14 18   case.  And yes, there's some dynamic between the parties,

09:32:16 19   but I think Your Honor has jurisdiction here to deal with

09:32:19 20   the stay on these patents.

09:32:21 21          But other than that, I didn't have anything else

09:32:23 22   to add, Your Honor.

09:32:24 23          THE COURT:  All right.  Thank you, Mr. Smith.

09:32:58 24          All right.  So I'm going to state my opinion

09:33:11 25   here, but one thing that I am going to request is that

09:33:19  1    before I sign any Order is that Mr. Smith consult with his

09:33:27  2    client and his perhaps attorneys from out of town who are on

09:33:38  3    the briefing, and basically submit a letter confirming that

09:33:47  4    E-Conolight is fully bound by whatever happens in the IPR as

09:33:58  5    Cree is.

09:34:03  6              All right, Mr. Smith?

09:34:04  7              MR. SMITH:  Understood, Your Honor.  Thank you.

09:34:05  8              THE COURT:  Okay.  So on the assumption that the

09:34:09  9    letter is going to say what I think it's going to say, which

09:34:12 10    is that they are fully bound, I'm going to grant the stay.

09:34:19 11    You know, we understand there are two utility patents and

09:34:25 12    they're fully instituted in terms of the IPR process.

09:34:31 13    There's a design patent which is pretty separate and which

09:34:44 14    is the tail on the dog here.  And so the IPR process will

09:34:59 15    simplify the issues for trial.

09:35:03 16              My only question is:  How much?  They should

09:35:07 17    result in basically removing anticipation and obviousness as

09:35:14 18    trial issues.  And of course, it's possible that some of the

09:35:20 19    claims will be invalidated or even all of the claims of the

09:35:24 20    two utility patents, in which case that will simplify the

09:35:29 21    trial.  But one way or another, it's going to simplify the

09:35:34 22    issues for trial because either there won't be one or it

09:35:37 23    won't have obviousness and anticipation as a part of it.

09:35:41 24              As I said, I'm not real confident that there

09:35:46 25    will be much simplification otherwise or that simplification

09:35:51 1    otherwise is likely, because I don't really expect what the

09:35:56 2    PTAB does to help on infringement.  But I think that in

09:36:00 3    terms of weighing the factor, the invalidity simplification

09:36:12 4    pretty strongly supports granting the stay.

09:36:15 5          The second factor I consider is whether

09:36:17 6    discovery is complete and a trial date is set.  And as

09:36:23 7    counsel have pretty much agreed and as the docket reflects,

09:36:29 8    there has been paper discovery.  There have been the

09:36:31 9    preliminary steps in a patent case.  We have a Scheduling

09:36:36 10   Order.  We have the motion to amend the Complaint.

09:36:41 11         So in any event, discovery has started, but the

09:36:45 12   case is pretty early.  The Markman exchanges, which are just

09:36:53 13   starting, I can't remember, I think maybe they were

09:36:57 14   postponed pending this hearing.  Let me check that.

09:37:12 15         MR. SMITH:  Your Honor, they were postponed, but

09:37:14 16   not necessarily because of the hearing.  There is an

09:37:16 17   exchange date tomorrow on the proposed constructions.

09:37:19 18         THE COURT:  Oh, okay.  I couldn't remember.  I

09:37:22 19   had some case where I thought I had stayed something or

09:37:28 20   postponed something pending, but maybe it was a different

09:37:31 21   case and a different decision.  In any event, the Markman is

09:37:35 22   at the very beginning, and so we're a long ways from expert

09:37:41 23   discovery, summary judgments, and there is a trial date set,

09:37:46 24   because that's our usual practice to set a trial date at the

09:37:49 25   beginning of the case.  But considering the trial date is

09:37:52  1   set for 2023, that doesn't really significantly help

09:37:59  2   Plaintiff here.  So basically the status of the case also

09:38:05  3   supports granting the stay.

09:38:07  4        And then the third thing that I consider is

09:38:10  5   whether granting a stay would cause the non-moving party,

09:38:13  6   the Plaintiff, to suffer undue prejudice from any delay or

09:38:16  7   to create a tactical disadvantage to the non-moving party.

09:38:21  8   And so some of my colleagues in the past have suggested

09:38:27  9   various things to consider in regards to this.  The timing

09:38:33 10   of the motion to the IPR, the timing of the motion for the

09:38:35 11   stay, the competitor status, and to some extent the status

09:38:40 12   of the IPR, though, that's kind of a factor when the motion

09:38:47 13   was filed or when the petition was filed and when it was

09:38:50 14   instituted.

09:38:50 15        But the timing of motions for re-exam -- I'm

09:38:54 16   sorry, for IPR and the timing of the motion for stay, and I

09:38:59 17   don't think Plaintiff disagrees with this, they're both very

09:39:03 18   timely.  Right.  The case was filed in November of 2020, and

09:39:22 19   here it is 11 months later.  The institution portion takes

09:39:29 20   six months.

09:39:31 21        And so this all happened pretty much as quickly

09:39:36 22   as it can.  You know, competitor status, I think they are

09:39:46 23   competitors.  I think the parties are competitors.  You

09:39:51 24   know, they may not be head-to-head competitors in the

09:39:55 25   two-player market, but I think they sell products that an

09:40:06 1   ultimate consumer could interchange from one or the other.

09:40:09 2   The fact that they may have different marketing or, you

09:40:14 3   know, distribution channels, I don't think that makes them

09:40:16 4   non-competitors.

09:40:20 5          And as I said, the IPR is just beginning, but we

09:40:25 6   know that it will be -- that there will be a decision, I

09:40:29 7   guess, approximately 11 months from now.  And so, you know,

09:40:39 8   generally speaking, this is a little more mixed.  I don't

09:40:45 9   really think the fact that there's an ITC proceeding against

09:40:53 10  or brought by Cree against RAB is the sort of prejudice that

09:41:08 11  is probably what's had in mind here.  I'm not really sure

09:41:15 12  that -- I think that I ought to be analyzing whether the

09:41:22 13  litigation here is a counterweight to litigation somewhere

09:41:25 14  else.

09:41:30 15         And to the extent there is a tactical

09:41:33 16  disadvantage created, it's basically the product of the

09:41:38 17  institution decision, because after all, if the institution

09:41:42 18  decision had been denied, we wouldn't be here.  And the

09:41:45 19  institution decision, you know, at least means that the PTAB

09:41:48 20  thought there was -- I mean, I have the exact language here.

09:41:53 21  A substantial question about the invalidity of the patents.

09:42:00 22         So I don't think there's any significant --

09:42:05 23  there's any undue prejudice, and so that, maybe not as

09:42:15 24  strongly as the other two, but that, also, I think, on

09:42:20 25  balance supports granting the stay.

09:42:29  1          You know, one of the things that's different

09:42:31  2     about this case than most cases is the unrelated,

09:42:39  3     essentially unrelated design patent and the products that,

09:42:51  4     so far as I know, are a dollar volume, a small portion of

09:42:56  5     this case and are really pretty separate.  And I guess the

09:43:13  6     point is that whatever the PTAB decides, it's not really

09:43:18  7     going to impact the lighting product.  I'm sorry, the design

09:43:24  8     patent case.

09:43:30  9          And I certainly understand whether or not the

09:43:32 10     design patent case is a good case or a bad case, that's

09:43:36 11     disputed by the parties.  But when I look at the case with

09:43:48 12     the three patents, the overall simplification that's going

09:43:51 13     to be obtained by reducing the arguments about the dog in

09:43:57 14     the case, it means that I should grant the stay.

09:44:04 15          So what I'd like is, Mr. Smith, if when you

09:44:10 16     submit the letter, you'd also submit a Proposed Order that

09:44:14 17     just, you know, one line grants the stay.  That will make

09:44:19 18     sure that I actually sign an order.  Okay?

09:44:22 19          MR. SMITH:  Understood, Your Honor.

09:44:24 20          THE COURT:  All right.  Mr. Simpson, nice to

09:44:26 21     meet you.  Thank you for coming.  We'll be in recess.

09:44:29 22          (Everyone said, Thank you, Your Honor.)

09:44:31 23          DEPUTY CLERK:  All rise.

         24          (Court was recessed at 9:44 a.m.)

         25          I hereby certify the foregoing is a true and

1    accurate transcript from my stenographic notes in the

2    proceeding.

3                    /s/ Heather M. Triozzi
                     Certified Merit and Real-Time Reporter
4                    U.S. District Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25